FILED

2022 Oct-31  AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **H & N CONSTRUCTION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 3:22-cv-242-CLS** |
| | ) | |
| **TARKETT USA, INC.; TARKETT ALABAMA, INC.; and TARKETT, INC.;** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This action was commenced in the Circuit Court of Colbert County, Alabama, by H & N Construction, Inc., "an Alabama corporation that does business in Lauderdale County[, Alabama]." Doc. no. 1-1 (State Pleadings), at ECF 5 (Complaint), ¶ 1 (alteration supplied).[1] The complaint contains three counts. The first alleges a breach of contract claim against defendant *Tarkett USA, Inc.*, a

---

[1] **Note well**: The heading of plaintiff's complaint reflects that it was drafted for filing in the Circuit Court of *Lauderdale County*, Alabama. *See* doc. no. 1-1 (State Pleadings), at ECF 5 (Complaint). That clearly was the proper venue. The construction project forming the basis of plaintiff's claims was located in Florence, Lauderdale County, Alabama. Yet, inexplicably, the complaint was filed in *Colbert County*, possibly because the office of plaintiff's attorney is located in that County. *See id*. at ECF 7. **Note also**: "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically: *i.e.*, "Electronic Case Filing." *See The Bluebook: A Uniform System of Citation*, Rule B17.1.4, at 26 (Harvard Law Review Ass'n *et al.* eds., 21st ed. 2020).

Delaware corporation with principal place of business in Ohio ("Tarkett USA").[2]  The second states a claim for violation of the "Alabama Prompt Pay Act" against the same defendant.[3]   And the final count alleges a claim for unjust enrichment against defendants *Tarkett, Inc.*, a Delaware corporation with principal place of business in Ohio ("Tarkett"),[4] and, *Tarkett Alabama, Inc.*, an Alabama corporation with principal place of business in the same State ("Tarkett Alabama").[5]  Tarkett USA, with the consent of Tarkett, removed the action to this court.[6]

The following opinion addresses the issues raised by the motion filed simultaneously with the notice of removal, in which Tarkett USA asks this court to either dismiss all of the plaintiff's claims without prejudice or, in the alternative, to transfer the action to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1404.[7]   *See* doc. no. 6 (Motion to Dismiss, or in the Alternative, Motion to Transfer).

---

[2] *See* doc. no. 1-1 (State Pleadings), at ECF 5 (Complaint), ¶ 2; doc. no. 3 (Tarkett USA, Inc., Corporate Disclosure Statement).

[3] *See* Ala. Code § 8-29-1 *et seq.*

[4] *See* doc. no. 1-1 (State Pleadings), at ECF 5 (Complaint), ¶ 4; doc. no. 5 (Tarkett, Inc., Corporate Disclosure Statement).

[5] *See* doc. no. 1-1 (State Pleadings), at ECF 5 (Complaint), ¶ 3; doc. no. 4 (Tarkett Alabama, Inc., Corporate Disclosure Statement).

[6] *See* doc. no. 1 (Notice of Removal), and doc. no. 2 (Consent to Removal).

[7] The pertinent portion of the cited statute provides that:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

# I.  JURISDICTION

Tarkett USA based removal upon that portion of the diversity statute providing that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, *and is between . . . citizens of different States*."  28 U.S.C. § 1332(a) (emphasis and ellipsis supplied); *see also* 28 U.S.C. § 1441;[8] 28 U.S.C. § 1446;[9] doc. no. 1 (Notice of Removal).  That is, the citizenship of the plaintiff must be different from the citizenship of every *properly joined* defendant.  *See, e.g.*, *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1564 (11th Cir.1994) (citing *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L. Ed. 435 (1806)).[10]

---

[8] Actions commenced in state courts "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

[9] Section 1446 defines the procedural requirements for removal.  In addition, since the Supreme Court's decision in *Chicago, Rock Island & Pacific Railway Co. v. Martin*, 178 U.S. 245, 247-48 (1900), federal courts have universally required that in cases involving multiple defendants all defendants *properly joined and served* must consent to removal.  *See, e.g.*, *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1044 (11th Cir. 2001); *In re Ocean Marine Mutual Protection and Indemnity Ass'n, Ltd.*, 3 F.3d 353, 355-56 (11th Cir. 1993).  Tarkett consented to Tarkett USA's removal, *see* doc. no. 2, but Tarkett Alabama did not.  Thus, as discussed in the following section, this court must determine whether Tarkett Alabama was properly joined.

[10] The fictitious Alabama defendants identified in plaintiff's complaint are not taken into account.  *See, e.g.*, 28 U.S.C. § 1441(a) (last sentence) ("the citizenship of defendants sued under fictitious names shall be disregarded"); *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997) ("fictitious party practice is not permitted in federal court"); *Floyd v. Allstate Insurance Co.*, 989 F. Supp. 1435, 1436 n.1 (M.D. Ala. 1998) ("[T]he fictitious Defendants named in Plaintiff's Complaint are due to be dismissed, there being no provision for fictitious party practice under federal law.").

Here, however, the citizenship of plaintiff and defendant Tarkett Alabama is not diverse, but the same. Accordingly, there is on the face of the pleadings a lack of complete diversity of citizenship — a fact that normally precludes federal jurisdiction, and casts doubt upon the propriety of Tarkett USA's removal.

Federal courts are courts of limited jurisdiction, and must be sure of their right and power to interpret and apply the law before addressing the merits of any issue. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998).

In that regard, it should be noted, at least in passing, that H & N did not oppose removal by filing a motion to remand, or even argue in its briefs that removal was improper due to the lack of diversity between plaintiff and defendant Tarkett Alabama.[11] Accordingly, an easy resolution of the question of the propriety of this removal proceeding would be to say that plaintiff has waived any objection to jurisdiction. *See, e.g.*, *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that a party waives an issue by failing to make any substantive arguments with respect to that issue); *see also Sepulveda v. United States Attorney General*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (holding that, when an

---

[11] *See* doc. no. 8 (Plaintiff's Response to Defendants' Motion to Dismiss or in the Alternative Motion to Transfer); and doc. no. 12 (H&N's Response to Tarkett USA Inc.'s Brief in Support of Removal).

appellant fails to raise an issue in her initial brief, that issue is deemed to have been abandoned).

However, that resolution would ignore the court's fundamental duty to evaluate its jurisdiction even in the absence of a party's objection or motion to remand. *See, e.g.*, *City of Kenosha v. Bruno*, 412 U.S. 507, 511 (1973) (observing that federal courts have a duty to ensure that their jurisdiction, "which is defined and limited by statute, is not exceeded") (quoting *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 152 (1908)); *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."); *Fitzgerald v. Seaboard System Railroad, Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.").

**A.    "Fraudulent Joinder" and Plaintiff's Claim Against the Non-Diverse Defendant**

Tarkett USA contends that "Tarkett Alabama was 'fraudulently joined' to this matter, and this Court may ignore its presence for purposes of removal."[12]

---

[12] Doc. no. 1 (Notice of Removal) at 2; *see also id.* at 4, ¶ 9 ("Tarkett Alabama's inclusion in this action does not destroy diversity because [it] was fraudulently joined.") (alteration supplied).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *see also, e.g.*, *Wilson v. Republic Iron and Steel Co.*, 257 U.S. 92, 97 (1921) (a diverse defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"); *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979) (pleading a frivolous or other illegitimate claim against a non-diverse defendant is characterized as "fraudulent joinder," and a district court may disregard the citizenship of such a defendant).[13]

The Eleventh Circuit has deemed joinder to be "fraudulent" in two situations. "The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. . . . The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs*, 154 F.3d at 1287 (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533, 1440 (11th Cir. 1993)); *see also, e.g.*, *Pacheco de Perez v. A. T. & T. Co.*,

---

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

139 F.3d 1368, 1380 (11th Cir. 1998).[14]

Tarkett USA relies upon the first situation, and contends that there are no circumstances under which H & N can state a viable cause of action against the non-diverse defendant, Tarkett Alabama.  In that regard, the Eleventh Circuit has said that,

> "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (emphasis in original).

*Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (*per curiam*) (emphasis in original, alteration supplied).

Thus, determination of the propriety of Tarkett Alabama's joinder hinges upon H & N's ability, as a matter of law, to seek recovery from that non-diverse defendant for "unjust enrichment," as alleged in Count III, while simultaneously seeking damages from Tarkett USA for breach of the terms of the express contract alleged in

---

[14] The Eleventh Circuit also has said that the joinder of a diverse defendant with a nondiverse defendant "as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant" constitutes a third type of fraudulent joinder. *Triggs*, 154 F.3d at 1287 (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).

Count I.  The answer to that question will determine whether this action should be remanded to state court for lack of jurisdiction, or whether plaintiff's unjust enrichment claims are due to be dismissed.  *E.g.*, *Stillwell v. Allstate Insurance Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citation omitted).[15]

### 1.    Background facts

The claims asserted in H & N's complaint arise from its "Design/Build Contract/Agreement" with Tarkett USA, under the terms of which H & N agreed to design and construct a manufacturing facility in connection with Tarkett USA's "LVT Competitiveness Project" on property located in Florence, Lauderdale County, Alabama.[16]  Count I of the complaint alleges that:

> 7.  In Article 5, subsection 5.1.1 of the contract Tarkett USA agreed to reimburse H & N for the direct costs of the work, as defined in the contract, and a contractor's fee, as defined in the contract.  The contract defined "cost of the work" as cost necessarily and reasonably incurred in the performance of the work actually paid by H & N.  Tarkett USA agreed to pay H & N a contractor's fee of 8% of all cost that H &

---

[15] While the subsequent discussion focuses upon plaintiff's ability, as a matter of law, to maintain the claim alleged in Count III of its complaint against Tarkett Alabama specifically, the same reasoning applies to whether plaintiff can maintain the same claim against Tarkett.  As a diverse entity, however, Tarkett has no preclusive effect on this court's exercise of diversity jurisdiction under 28 U.S.C. § 1332.

[16] *See* doc. no. 1-1 (State Pleadings), at ECF 5-6 (Complaint), ¶ 6; doc. no. 6-2 ("Design/Build Contract/Agreement"), at ECF 2.  Neither the parties' pleadings, nor the terms of the foregoing contract defines the nature of the so-called "LVT Competitiveness Project."  Even so, it appears that "LVT" is an abbreviation for "luxury vinyl tiles," and that Tarkett USA is engaged in the manufacture of such flooring materials.  *See* https://commercial.tarkett.com/en_US/category-tna_C05006-luxury-vinyl-tiles-and-planks (last visited Oct. 9, 2022).

N incurred.

8.  H & N has submitted invoices to Tarkett for the work and material and its contractor's fee but the invoices in the total amount of $318,780.59 remain unpaid.

Doc. no. 1-1 (State Pleadings), at ECF 6 (Complaint), ¶¶ 7 & 8.

Count III of the complaint contends that defendants *Tarkett Alabama* (as the alleged "operator" of the manufacturing facility to be constructed by H & N[17]) and *Tarkett* (as the alleged "owner" of the Lauderdale County land upon which the plant was to be constructed[18]) "have been unjustly enriched by the unpaid labor and materials provided by H & N." *Id*. at ECF 7 (Complaint), ¶ 16.

In other words, Count III of H & N's complaint alleges a right to equitable relief for the benefit conferred upon Tarkett Alabama and Tarkett by virtue of H & N's performance of duties defined in the written agreement that is the basis of relief simultaneously sought from Tarkett USA for breach of contract in Count I.

To establish that Tarkett Alabama's joinder was improper, Tarkett USA must

---

[17] *See* doc. no. 1-1 (State Pleadings), at ECF 5 (Complaint), ¶ 3 ("Defendant Tarkett Alabama, Inc. ('Tarkett Alabama'), is an Alabama corporation that operates a manufacturing facility located at 430 County Rd. 30 in Lauderdale County."); *see also id.* at ECF 7, ¶ 14 (describing Tarkett Alabama as "the owner/operator of the plant").

[18] *Id*. at ECF 5, ¶ 4 ("Defendant Tarkett, Inc. ('Tarkett'), is a Delaware corporation that according to the records of the Lauderdale County Revenue Commissioner owns the real property located at 430 County Rd. 30 in Lauderdale County."); *id*. at ECF 7, ¶ 14 (describing "Tarkett and/or fictitious defendants A, B, and C as the owner(s) of the property"). As observed in note 10, *supra*, fictitious defendants are disregarded.

prove — by clear and convincing evidence — that H & N has "no possibility" of recovering for unjust enrichment against Tarkett Alabama. *Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1283-84 (11th Cir. 2006).[19]  In assessing the availability of relief, the court does not conduct a full-fledged merits analysis, but instead need only determine whether there is "even a possibility that a state court would find that the complaint states a cause of action" against the non-resident defendant.  *Stillwell v. Allstate Insurance Co.*, 663 F.3d 1329 1333 (11th Cir. 2011) (citation omitted); *accord Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant," but "need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.").

Determining whether Tarkett USA has met that burden requires inspection of the relief sought in this case.  In order to recover on the unjust enrichment claim alleged in Count III, H & N must prove that its performance under the terms of its written contract with Tarkett USA was "undertaken with an expectation that *whoever benefitted* thereby"[20] would provide compensation; and, additionally, that "any benefit conferred as a result of those efforts was *not* merely incidental" to the contractually-

---

[19] The burden of proving fraudulent joinder rests with the removing party.  *See Pacheco de Perez v. A. T. & T. Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).  And, the claim must be supported by clear and convincing evidence. *See Stillwell v. Allstate Insurance Co.,* 663 F.3d 1329, 1332 (11th Cir. 2011).

[20] This, of course, refers to the unjust-enrichment defendants (Tarkett Alabama and Tarkett), and not to the party to which H & N owed a contractual duty of performance (Tarkett USA).

agreed-upon performance.  *Utah Foam Products, Inc. v. Polytec, Inc.*, 584 So. 2d 1345, 1350 (Ala. 1991) (emphasis supplied); *see also Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006).  That, H & N cannot do.

H & N could not plausibly have expected to be compensated by Tarkett Alabama or Tarkett for performance of its duties under the terms of an express contract with Tarkett USA.  Any benefit conferred upon Tarkett Alabama or Tarkett by virtue of H & N's performance of its contractual duties was *purely incidental* to H & N 's contract with Tarkett USA.  H & N made a legal promise to Tarkett USA to perform construction at a specific property; so, how could H & N possibly now claim that fulfillment of that promise unjustly enriched a third party with interest in the same property?  The court will not resort to a "'fiction of law' where 'a promise is imputed [to Tarkett Alabama] to perform a legal duty, as to repay money by fraud or duress.'" *Hercules Inc. v. United States*, 516 U.S. 417, 423-24 (1996) (quoting *Baltimore & Ohio R. Co. v. United States*, 261 U.S. 592, 597 (1923)).  H & N's qualms here are with Tarkett USA.  Its quasi- or implied-contract claims against Tarkett Alabama and Tarkett are futile as a matter of law.

Applicable case law further illuminates H & N's inability to recover in equity. For example, the Alabama Supreme Court's opinion in *Utah Foam* rejected an unjust-enrichment claim for want of any evidence that the plaintiffs "expected to be

compensated for their efforts" by the defendant. 584 So. 2d 1345-51 (reversing jury verdict for plaintiffs). There, the plaintiffs unsuccessfully sought to secure a roofing-construction contract with Teledyne, a commercial lessee responsible for the repair of several buildings damaged in a hurricane. *Id*. at 1348. In pursuit of that contract, the plaintiffs brought in roofing expert Utah Foam to make a presentation to Teledyne. *Id.* Even though the plaintiffs ultimately failed to secure the Teledyne contract, Utah Foam profited from the introduction by way of business development. *See id.* at 1348-49. The Alabama Supreme Court held that the plaintiffs had no cause of action against Utah Foam, with whom they had no contractual relationship, and from whom they had no reasonable expectation of compensation; instead, any benefit the plaintiffs conferred upon Utah Foam was merely incidental to the plaintiffs' endeavor to contract with Teledyne. *Id.* at 1350.

Here, H & N agreed with Tarkett USA to perform design and construction services at the Florence  property in exchange for payment from Tarkett USA. H & N  now alleges that Tarkett USA owes more than $300,000 for those services. While seeking restitution from Tarkett Alabama and Tarkett for benefits allegedly received by virtue of H & N's agreement with Tarkett USA, H & N does not allege that it entered into the contract with the expectation of additional compensation from Tarkett Alabama or Tarkett. Any such claim would be meritless. H & N has pointed to no

12

precedent, much less a straightforward breach of contract claim for failure to pay, in which an incidental beneficiary of services rendered according to the terms of an express contract has been forced to compensate the plaintiff upon the offeror's breach.[21]   Any benefit conferred upon Tarkett Alabama could not possibly be characterized as "unjust" in light of the reality that H & N contracted with Tarkett USA to confer those precise benefits.  Assuming, *arguendo*, that Tarkett USA did not breach the agreement, no conceivable argument would exist for injustice in the benefit conferred upon Tarkett Alabama or Tarkett by way of H & N's contractual performance.  Tarkett USA's alleged failure to pay cannot give rise to the liability of Tarkett Alabama or Tarkett in equity.

Moreover, another judge in this district refused to entertain quasi-contractual recovery in nearly identical circumstances.[22]   *See Community Spirit Bank  v. Fidelity National Title Insurance Co.*, 2009 WL 10688141 (N.D. Ala. June 22, 2009) (Bowen, J.).[23]   In that case, Community Spirit Bank asserted claims for breach of contract and

---

[21] The court does not comment here upon the merits of plaintiff's breach of contract claim against Tarkett USA.

[22] H & N contends that this court's prior decision on Alabama law is "no[t] persuasive authority," doc. no. 12 (H & N's Response to Tarkett USA, Inc.'s Brief in Support of Removal), at 4, but cites as support Eleventh Circuit Rule 36-2.  That rule, however, stating that unpublished opinions "may be cited as persuasive authority," directly contradicts H & N's contention.

[23] The *Community Spirit* decision was rendered by U.S. District Judge Dudley H. Bowen of the Southern District of Georgia, sitting by designation of the Chief Judge of the Eleventh Circuit during the incapacity of the present judicial officer following open-heart surgery.

unjust enrichment in an Alabama state court, naming Fidelity, a New York corporation, and Prince Brothers, an Alabama corporation, as defendants.  The Bank alleged that it had requested insurance of a mortgage lien from Prince Brothers.  *Id.* at *1.  The Bank also alleged that it paid Prince Brothers, as Fidelity's agent, a premium in exchange for issuance of the title-insurance agreement.  *Id.*  Fidelity removed the case to this court, stating in its notice that Prince Brothers, the non-diverse defendant, had been fraudulently joined.  *Id.*  In support, Fidelity relied upon the Bank's impossibility of maintaining its action against Prince Brothers.  *Id.* at *2.  As an initial matter, Alabama agency law precluded the Bank from maintaining its contract action against Prince Brothers.  *Id.* at *4.[24]  So, alongside the contract action against Fidelity,[25] the Bank's ability to simultaneously maintain an action against Prince Brothers depended solely upon the possibility of success in equity — namely, unjust enrichment grounded in quasi-contract.  The Bank claimed that Prince Brothers had been "unjustly enriched by its retention of a portion of the [title-insurance] premium."  *Id.* at *5.  This court rejected that argument, concluding that the Bank "fail[ed] to state a possible cause of

---

[24] "Alabama law does not impose liability upon an agent who contracts on behalf of a disclosed principal. Stated another way, Alabama law is well established that if an agent successfully binds a principal in contract, the agent is not liable [absent] a clear intention to add or impose his personal liability." *Id.* (citing *Ricwil, Inc. v. S.L. Pappas & Co.*, 599 So. 2d 1126, 1129 (Ala. 1992)). Because the Bank's complaint conceded knowledge that Prince Brothers was acting as Fidelity's agent, the contract claim was barred.

[25] Fidelity, of course, was bound — as principal for Prince Brothers — to the title-insurance agreement.

14

action for unjust enrichment against Prince Brothers because[,] under Alabama law[,] unjust enrichment is an equitable remedy available only when no remedy at law exists[,] and [the Bank] ha[d] a legal remedy under its breach of contract claim against Fidelity." *Id*. (alterations supplied). This court noted that "unjust enrichment is 'an old *equitable* remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.'" *Id.* (quoting *Avis Rent A Car Systems, Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003) (emphasis in original)). This court made clear that, "[a]s an equitable remedy, unjust enrichment is available only when there is no adequate remedy at law." *Id*.; *accord, e.g.*, *Northern Assurance Co. v. Bayside Marine Construction, Inc.*, 2009 WL 151023, *4 (S.D. Ala. Jan. 21, 2009) (citing *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006); and *Teleprompter of Mobile, Inc. v. Bayou Cable TV*, 428 So. 2d 17, 20 (Ala. 1983)).

The similarities between *Community Spirit* and the present case are apparent. In each, the plaintiff sued in state court for breach of contract and, simultaneously, for unjust enrichment against a defendant for whom no breach-of-express-contract claim was available, on the theory of quasi-contract. Upon timely removal, the contracting defendant articulated the non-diverse, equitable defendant's improper joinder in the suit. And, even though the non-diverse defendant in each case likely received *some* benefit (Prince Brothers, the premium; Tarkett Alabama, the construction-related

15

improvements), the benefit occurred incidentally to performance of a contractual duty the plaintiff owed to another party.

In fact, the only material difference between the two cases actually weighs in favor of dismissal. Even though the Bank admittedly knew of the agency relationship between Prince Brothers and Fidelity (sufficient to bar the breach of contract claim against Prince Brothers), the Bank may not have possessed intricate understanding of Alabama agency law upon entry into the contract. In other words, after setting up the agreement with Prince Brothers, the Bank may well have *expected* compensation from Prince Brothers in the event of breach. But, in the present case, H & N could not reasonably have expected compensation for its contractual services from any party other than Tarkett USA, the entity with which it contracted for work at the Florence property. These principles amount to more than a black-letter bar on simultaneous pursuit of remedies in equity and at law. Fidelity was available, upon a finding of breach, to make the Bank whole in *Community Spirit*; here, H & N would receive exactly that for which it bargained if the merits of its breach of express contract claim against Tarkett USA were to prove fruitful.

H & N concedes that claims for "[b]reach of contract and unjust enrichment are mutually exclusive when based on the same facts and contract";[26] and, yet, H & N

---

[26] Doc. no. 12 (H & N's Response to Tarkett USA Inc.'s Brief in Support of Removal), at 2-4, ¶ 3.

bases its unjust enrichment claim on the same facts underlying the contract claim.[27]
Nonetheless, H & N asserts that recovery from Tarkett Alabama and Tarkett is still
possible because neither was a party to the contract.[28]   According to H & N, "Alabama
appellate courts have limited the preclusion of equitable claims to instances when the
claimant has an express contract with the [unjust enrichment] defendant."[29]
Unfortunately for H & N, the cases to which it clings for support provide none.

First, H & N cites *GE Capital Aviation Services, Inc. v. Pemco World Air
Services, Inc.*, 92 So. 3d 749 (Ala. 2012), a decision in which the Alabama Supreme
Court reversed a jury verdict for the plaintiff and remanded the case for a new trial
because the trial court improperly submitted to the jury a claim for "breach-of-an-
implied-contract." *Id*. at 765.   But the *GE Capital* court was faced with argument
regarding a "contract implied in fact" — that is, an implied promise to perform services
in exchange for an implied promise to compensate those efforts. *See id.* at 764-65.[30]

---

[27] Doc. no. 1-1 (State Pleadings), at ECF 7 (Complaint), ¶ 13.

[28] Doc. no. 12 (H & N's Response to Tarkett USA, Inc.'s Brief in Support of Removal).

[29] *Id.* at 4 (citing *GE Capital Aviation Services, Inc. v. Pemco World Air Services, Inc.*, 92 So. 3d 749, 764 (Ala. 2012); *Brannan & Guy, PC v. City of Montgomery*, 828 So. 2d 914, 921 (Ala. 2002); *Vardaman v. Florence City Board of Education*, 544 So. 2d 962 (Ala. 1989)).

[30] *Accord* Candace Saari Kovacic-Fleischer, *Quantum Meruit and the Restatement (Third) of Restitution and Unjust Enrichment*, 27 Rev. Litig. 127 (2007) (clarifying the distinction between contracts implied in fact and those implied in law); *see also* Jenelle Mims Marsh, *Alabama Law of Damages* § 17.2 (6th ed. 2022) ("There are two types of implied contracts—those implied in law and those implied in fact.") (citations omitted).

Contracts "implied in fact" are just that:  contracts.  *Id.*[31]  The distinction between implied-in-fact contracts and express contracts lies simply in the nature of the promise to perform.  *See id.* ("When services are rendered at the request of a recipient or under circumstances from which it can fairly be inferred that both parties expected the services would be compensated, there is a contract implied in fact to pay for them."); *see also, e.g.*, *Hercules*, 516 U.S. at 423-24 ("An agreement implied in fact is 'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'") (quoting *Baltimore & Ohio R. Co. v. United States*, 261 U.S. 592, 597 (1923), and citing *Russell v. United States*, 182 U.S. 516, 530 (1901)).  To say the least, H & N's reliance on *GE Capital* is puzzling; nothing in the opinion provides any support for H & N's assertion that the court "limited the preclusion of equitable claims to instances when the claimant has an express contract with the [unjust enrichment] defendant. . . ."  Doc. no. 12 ("H & N's Response to Tarkett USA Inc.'s Brief in Support of Removal"), ¶ 4, at 5 (alteration supplied).[32]

In any event, H & N makes no claim for contract implied in fact; instead,

---

[31] *See also* Kovacic-Fleischer, *supra* note 30, at 129 ("A contract implied in fact is a contract, but not an express contract," requiring "consideration.").

[32] *GE Capital*, unlike the present case, involved a single plaintiff and a single defendant.

plaintiff seeks to recover for Tarkett Alabama's unjust enrichment on a theory of contract implied in *law*.[33]  "[A]n agreement implied in law is a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'"  *Hercules*, 516 U.S. at 424 (quoting *Baltimore*, 261 U.S. at 597).  Unlike a contract implied in fact ("implied contract"), a contract implied in law ("quasi-contract," or "constructive contract") is really not a contract at all.  Moreover, recovery on a quasi-contract claim for unjust enrichment sounds in restitution — that is, in equity.  *Id.* ("The distinction between 'implied in fact' and 'implied in law,' and the consequent limitation, is well established in our cases.")

Second, plaintiff cites *Brannan & Guy, P.C. v. City of Montgomery*, 828 So. 2d 914 (Ala. 2002):  a case in which the Alabama Supreme Court affirmed summary judgment in a declaratory judgment action over an attorney-fee dispute.  *Id*. at 914. There, the parties had contracted for legal services at a specified hourly rate, and a dispute arose when the law firm billed at a higher rate pursuant to an alleged agreement.  The trial court entered summary judgment for the City, and the attorneys appealed.  *Id*.  In part, the attorneys argued on appeal that the trial court erred by

---

[33] "Contracts implied in law are more properly described as quasi or constructive contracts . . . ." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (quoting *Green v. Hospital Building Authority*, 318 So. 2d 701, 704 (1975)).  "A contract implied in law, or a quasi-contract, is not a contract, but an action in restitution in which the defendant received a gain at plaintiff's expense *under circumstances that make it unjust for the defendant to keep the gain*."  Kovacic-Fleischer, *supra* note 30, at 130 (emphasis supplied).

19

failing to apply a theory of quantum meruit.[34]  *Id.*  It remains unclear to this court exactly how plaintiff gleans from that case the notion that Alabama law "limit[s] the preclusion of equitable claims to instances when the claimant has an express contract with the defendant . . . ."[35]  The *Brannan* case has been cited as authority for the general notion that "recovery under an implied [in fact] contract theory and under . . . unjust enrichment" is "barred by the existence of an express contract governing the same subject matter."  *Mallory & Evans Contractors & Engineers, LLC v. Tuskegee University*, 463 F. App'x 862, 864 n.2 (11th Cir. 2012) (citing *Brannan*, 828 So. 2d at 921) (additional citation omitted).  Whether or not that language is universally applicable (instances can be imagined in which, most likely by fraud or duress, a contractual remedy is inadequate), *Brannan*'s refusal to allow the plaintiff to proceed simultaneously with express and implied-in-fact contract claims — both of which sound in contract law — in no way indicates that plaintiffs are permitted to sue in equity for injuries related directly to an express contract.

Third, plaintiff cites *Vardaman v. Florence City Board of Education*, 544 So. 2d 962 (Ala. 1989), as a case authorizing its unjust enrichment claim against Tarkett Alabama.  But in *Vardaman*, the Alabama Supreme Court merely reiterated the

---

[34] Quantum meruit may refer either to implied contract or quasi-contract; the circumstances dictate which theory is applicable.  *See, e.g.*, *Hercules*, 516 U.S. at 423-24.

[35] Doc. no. 12 (H & N's Response to Tarkett USA Inc.'s Brief in Support of Removal), ¶ 4, at 5.

following principle:  "It has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same subject matter."  *Id.* at 965 (citing *Alexander v. Alabama W. R.R.*, 60 So. 295 (Ala. 1912); *Loval v. Wolf*, 60 So. 298 (Ala. 1912); and 11 *Williston  on Contracts* § 1295 (3d ed. 1968)).[36]  As the immediately preceding discussion makes clear, plaintiff appears to have misunderstood the import of those cases.

To summarize, plaintiff's argument contradicts the general unavailability of equitable relief when there is an adequate remedy at law.  *See, e.g.*, *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 509 (1959) (observing that, "in the federal courts[,] equity has always acted only when legal remedies were inadequate").

The court concludes that Tarkett Alabama and Tarkett were improperly joined as defendants.  Alabama law precludes H & N, under the circumstances of this case, from maintaining the unjust enrichment claims alleged in Count III, together with the breach of contract claim stated in Count I.  As such, the court will dismiss Count III and, along with it, defendants Tarkett Alabama and Tarkett.

Accordingly, complete diversity of citizenship exists between H & N and Tarkett USA; the court has jurisdiction under 28 U.S.C. § 1332(a); removal was proper; and this court may now address the merits of the alternative motion to

---

[36] *See also, e.g.*, Marsh, *supra* note 30 ("Where there is an express contract, the theory of quasi-contract is inappropriate.")

transfer.

**B.**      **Venue and the Forum-Selection Clause**

The forum-selection clause at issue in this case provides that: "This Agreement shall be construed and controlled by the laws of the State of Ohio, and the parties further consent to the exclusive jurisdiction by the state and federal courts sitting in the [*sic*] Cuyahoga County, Ohio." Doc. no. 6-2 (Contract), ¶ 10.1, at ECF 10. Cuyahoga County is within the jurisdiction of the United States District Court for the Northern District of Ohio. Plaintiff does not challenge the validity of the forum-selection clause with respect to Tarkett USA, but argues against its enforcement.

The Supreme Court clarified the procedure for assessing the validity and enforcement of forum-selection clauses in *Atlantic Marine Construction Company, Inc. v. United States District Court*, 571 U.S. 49 (2013). There, Atlantic Marine, a Virginia corporation with its principal place of business in Virginia, entered into a contract with the United States Army Corps of Engineers to construct a child-development center on the Fort Hood military base in the Western District of Texas. Atlantic Marine then entered into a subcontract with J-Crew Management, Inc., a Texas corporation, for performance of some of the work on that project. The subcontract included a forum-selection clause which required the parties to litigate all disputes in the Circuit Court for the City of Norfolk, Virginia, or the United States

22

District Court for the Eastern District of Virginia, Norfolk Division.  *Id*. at 52-53.

When a dispute arose about payments under the subcontract, J-Crew ignored the forum-selection clause and sued Atlantic Marine in the United States District Court for the Western District of Texas, invoking that court's diversity jurisdiction. Atlantic Marine moved to dismiss the suit, arguing that the forum-selection clause in the parties' subcontract rendered venue in the Western District of Texas "wrong" under 28 U.S.C. § 1406(a),[37] and "improper" under Federal Rule of Civil Procedure 12(b)(3).[38]  Alternatively, Atlantic Marine moved to transfer the case to the Eastern District of Virginia pursuant to the forum-selection clause and 28 U.S.C. § 1404(a).[39]

The district court denied both motions, holding with regard to the first that § 1404(a) was the exclusive mechanism for enforcing forum-selection clauses. Addressing the alternative motion, the district court held that Atlantic Marine bore the burden of establishing that a transfer under § 1404(a) was appropriate, and that

---

[37] Section 1406(a) provides that:  "The district court of a district in which is filed a case laying venue *in the wrong* division or *district* shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  (Emphasis supplied.)

[38] Rule 12(b)(3) allows a defendant to raise a defense of *improper* venue by motion, before a responsive pleading is filed.

[39] Section 1404(a) provides that:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Note that § 1404(a) does not condition transfer upon a finding that the court in which suit was commenced is either the "wrong" or "improper" venue.

the court would consider a number of public and private interest factors, of which the forum-selection clause would be only one.

Atlantic Marine filed a petition for writ of mandamus in the Fifth Circuit Court of Appeals, requesting that Court to direct the district court to dismiss the case pursuant to § 1406, as having been filed in the "wrong" venue, or transfer the controversy to the Eastern District of Virginia pursuant to § 1404(a), as required by the forum-selection clause in the parties' subcontract. The Fifth Circuit denied the petition for writ of mandamus on all grounds, saying that Atlantic Marine had failed to establish a "'clear and indisputable'" right to the relief sought. *Atlantic Marine*, 571 U.S. at 54 (quoting *In re Altantic Marine Construction Co.*, 701 F.3d 736, 738 (5th Cir. 2012)).

The Supreme Court granted certiorari and, in an opinion authored by Justice Alito for a unanimous Court, reversed both lower courts. *Id.* at 52. The Court held that 28 U.S.C. § 1406 and Rule 12(b)(3) are not the proper tools for enforcing a forum-selection clause in federal court. They may be used only when venue is "wrong" or "improper" in the district court in which the suit was commenced, and a forum-selection clause does not make venue in a particular court "wrong" or "improper"; rather, courts should look to the venue statutes to make such determinations.

24

The Supreme Court also held that the Western District of Texas and Fifth Circuit had correctly concluded that § 1404(a) was the proper mechanism for enforcing a forum-selection clause that points to another federal district,[40] but that the district court had not applied the statute correctly.  Rather, "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases."[41]  In that regard, the Supreme Court went on to hold that:

> The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways.
>
> First, the plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.  Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the "plaintiff's venue privilege." [*Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964)].  But when a plaintiff agrees by contract to bring suit only in a specified forum — presumably in exchange for other binding promises by the defendant — the plaintiff has effectively exercised its "venue

---

[40] *Id*. at 54 (observing that the lower courts had agreed that § 1404(a) was "the exclusive mechanism for enforcing a forum-selection clause that points to another federal forum when venue is otherwise proper in the district where the case was brought"); *id*. at n.1 (noting that "Venue was otherwise proper in the Western District of Texas," because the subcontract between Atlantic Marine and J-Crew had been "entered into and was to be performed in that district"); *id*. at 59 ("Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district.").

[41] *Id*. at 59-60 (internal quotation marks and citation omitted); *see also id*. at 63 ("The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'  For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'") (citations omitted).

privilege" before a dispute arises.  Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.

Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests.  When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.  . . .

As a consequence, a district court may consider arguments about public-interest factors only.  Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.  . . .

Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6 (1981) (listing a court's familiarity with the "law that must govern the action" as a potential factor).  A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494-496 (1941).  However, we previously identified an exception to that principle for § 1404(a) transfers, requiring that the state law applicable in the original court also apply in the transferee court.  *See Van Dusen*, 376 U.S., at 639.  We deemed that exception necessary to prevent "defendants, properly subjected to suit in the transferor State," from "invok[ing] § 1404(a) to gain the benefits of the laws of another jurisdiction . . . ."  *Id*., at 638; *see Ferens v. John Deere Co*., 494 U.S. 516, 522 (1990) (extending the *Van Dusen* rule to § 1404(a) motions by plaintiffs).

26

*Atlantic Marine*, 571 U.S. at 63-65 (alteration supplied, footnote omitted).

In light of the foregoing holdings, H & N is tasked with showing that this case is "exceptional" — that the public interest "overwhelmingly disfavor[s] a transfer." However, H & N has not pointed to *any* public-interest factors in support of its opposition to transfer and, thus, has failed to shoulder that burden.

Accordingly, this case should be transferred to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a) and in accordance with the terms of the parties valid forum-selection clause. Before doing so, however, the court will dismiss Count II of H & N's complaint, stating a claim against Tarkett USA for an alleged violation of the "Alabama Prompt Pay Act,"[42] because the substantive law of the State of Ohio does not recognize such a claim.

## II.  CONCLUSION

For the foregoing reasons, the motion of Tarkett USA to dismiss or, in the alternative, to transfer this action is due to be denied in part and granted in part. Specifically, the court will enter a separate Order dismissing Counts II and III of plaintiff's complaint, and transferring the remaining breach of contract claim alleged in Count I to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).

---

[42] *See* note 3, *supra.*

27

**DONE** this 31st day of October, 2022.

_____
Senior United States District Judge

28